```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA

DANYELLE DANIELS DAVIS                      CIVIL ACTION
ON BEHALF OF "JANE DOE"

VERSUS                                      NO. 04-3511

ORLEANS PARISH SCHOOL
BOARD, ET AL.                               SECTION "J" (4)
```

**ORDER AND REASONS**

Before the Court are Defendants' Motions Brought Under Rule 12(c) and Rule 12(d). The motions are opposed. After considering the motion, opposition, record and applicable law, the Court finds that Defendants' motions should be granted and this case should be dismissed.

**BACKGROUND**

In October of 1996, Jane Doe, a mentally retarded student enrolled in Special Education at George Washington Carver Senior High, was gang raped by students during school hours. As a result of the incident, Jane Doe was periodically confined to mental institutions for a period of over three years. On February 7, 1997, Barbara Haynes, Doe's mother and tutrix, filed suit in Civil District Court for the Parish of Orleans against

1

Defendants, the Orleans Parish School Board ("OPSB"), Dr. Lindney Moore, Lawrence Amour, USF&G Insurance Company and Scottsdale Insurance Company.  On October 14, 2002, the parties entered into a settlement agreement totaling $1,575,000.  The state Court approved the settlement with legal interest accruing from January 7, 2003.

Plaintiff asserts that the settlement was reached to provide a Lifecare Plan and Individual Education Plan to Jane Doe.  The insurance companies agreed to pay and have paid $1,075,000, and the remaining $500,000 was to be paid in February of 2003 by the OPSB.  Plaintiffs filed the present action because the OPSB has not paid its portion of the settlement.  This matter is presently before the court on Defendant's Rule 12(c) and (d) motions.

## LAW

Federal Rule of Civil Procedure 12(c) provides that a party may move for a judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial ...."  A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)(citations omitted).  "Pleadings should be construed

2

liberally and a judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain."  The district court may dismiss a claim when it is obvious that the plaintiff cannot prove facts in support of his claim that would entitled him to relief.  *Id*.  When analyzing the complaint, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  *Id*. at 312-13.  The court does not "accept as true conclusory allegations or unwarranted deductions of fact."  *Id*. at 313 (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id*.(quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)(per curiam)).

## DISCUSSION

Plaintiff asserts causes of action based in both federal and state law.  Plaintiff's federal claims are based on the following: (1) Denial of Equal Protection; (2) Violation of the Rehabilitation Act and the IDEA; and, (3) Violation of the

Contracts Clause.  In addition to her causes of action based in federal law, Plaintiff has asserted a number of causes of action based in state law.

**A.    CLAIMS BASED IN FEDERAL LAW**

    **(1)  Equal Protection**

Plaintiff contends that the OPSB's Policy and Regulation 3511.5, along with the OPSB's practices, violated her constitutional right to equal protection because the OPSB's continual refusal to pay the negotiated settlement denies Plaintiff educational services, unless she agrees to substantially reduce the settlement amount.  Plaintiff asserts that intermediate scrutiny should be applied, however, if the court decides the rational basis test applies, Plaintiff contends there is no rational basis as to why certain settlements or judgments under the Regulation are excluded from the bid-down policy,[1] while others – such as Plaintiff's – are not.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

---

[1] The "bid-down policy" or Regulation 3511.5R provides that all claims resolved by the Resolution Deadline will be placed on an Initial Payment Schedule, which is determined by chronological order of the claim's resolution date.  By reducing claims in multiples of five percent, claimants move up in priority on the payment schedule.  The greater the percentage of reduction, the higher a claim moves in priority.

essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)(citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  Generally, the state legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude.  *Id*. at 440(internal citations omitted).

In considering whether state legislation violates the Equal Protection Clause, courts apply different levels of scrutiny to different types of classifications.  At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose. *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 17, 93 S. Ct. 1278, 1288, 36 L. Ed. 2d 16 (1973).  "Classifications based on race or national origin and classifications affecting fundamental rights are given the most exacting scrutiny.  Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy." *Clark v. Jeter*, 486 U.S. 456 (1988)(internal citations omitted).

The United States Supreme Court case of *Kadrmas v. Dickinson*

*Public Schools*, 487 U.S. 450 (1988) is instructive and sets out the proper test to be applied in this case.  As stated by the Court, "[u]nless a statute provokes 'strict judicial scrutiny' because it interferes with a 'fundamental right' or discriminates against a 'suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose."  *Id*. at 457-58.  It is well-established that education, while obviously important, is not a fundamental right.  *See id*. at 458(citing *Papasan v. Allain,* 478 U.S. 265, 284(1986); *Plyler v. Doe*, 457 U.S. 202, 223 (1982); *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973)).  Further, the Court has stated that mental retardation, in and of itself, is not a suspect class.  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 442-43 (1985).  Thus, Plaintiff, a mentally retarded student who is owed settlement monies by Defendants, does not belong to a suspect class, and there are no fundamental rights involved in this case.  Consequently, the Regulation at issue will withstand an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose.

Applying the rational basis test to the present matter, the Court finds that the Regulation furthers a substantial goal of

6

the OPSB.  As stated within the Policy, the procedures were adopted to (1) maximize the use of the OPSB's limited resources, (2) permit the OPSB to balance its legal obligations to pay with the Board's mission to furnish educational services, and (3) to provide for fair and equitable treatment of those who have obtained final judgments and settlements given the Board's budgetary constraints.  When a local economic regulation is challenged as violating the Equal Protection Clause, courts are to defer to legislative determinations as to the desirability of particular statutory discriminations.  *See City of New Orleans v. Nancy Dukes*, 427 U.S. 297, 302 (1976).  "The judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in an area that neither affects fundamental rights nor proceeds along suspect lines." *Id*.  Despite Plaintiff's contention that the Board created an immediate inability to pay its tort liability when it transferred monies from its general liability fund to cover the costs of health insurance, the Court cannot substitute its own judgment as to the wisdom of economic policies (or the lack thereof) adopted by a democratically elected Board.

   Notably, plaintiff does not allege that she was singled out because of her status as a mentally retarded student.  Instead, her status is similar to the status of all other persons who have

state law tort judgments or settlements which are required to be submitted to the bid-down procedure of the OPSB. Other than the fact that Plaintiff is a mentally retarded student, Plaintiff does not identify how she is being treated differently from those persons with outstanding state court settlements or judgments against the OPSB. In fact, case law indicates that the OPSB has treated Plaintiff the same way as persons similarly situated. In *Cooper v. Orleans Parish School Board*, the plaintiff sued the OPSB to collect on a three million dollar judgment awarded in a previous suit against the OPSB. In *Cooper*, 99-050 (La. App. 4 Cir. 9/8/99), 742 So. 2d 55, the Louisiana appellate court examined the OPSB's application of Regulation 3511.5. The court reviewed the bid-down procedure and found that a rational basis for the discount categorizations related to legitimate government objectives. Thus, Plaintiff in this case has been treated no differently than similarly situated persons with judgments against or settlement agreements with the OPSB. Accordingly, Plaintiff's equal protection claim fails as a matter of law.

**(2) The IDEA and The Rehabilitation Act**

Plaintiff argues that Defendants violated the provisions of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, by failing to provide her with an adequate individual

education plan.  Defendants contend that this court does not have jurisdiction over the IDEA or Rehabilitation Act claims because Plaintiff has failed to exhaust her administrative remedies.

Plaintiff asserts that she has not been notified of an existing administrative procedure and is under the belief that none exists.  However, Plaintiff contends that if an administrative procedure exists, any attempt to seek administrative relief would be futile in light of the numerous attempts Plaintiff has made on Defendants.  Further, Plaintiff explains that she has not been notified whether an administrative appeal to the state level exists and, therefore, Defendants cannot now claim that Plaintiff failed to exhaust this remedy.  Moreover, Plaintiff argues that she settled her state court claims for the maximum amount allowed by law, therefore, there was no need for Plaintiff to seek administrative remedies.

As stated by the Fifth Circuit, 20 U.S.C. § 1415(b)(1)(E)

> guarantees parents 'an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.'  Then, section 1415(b)(2) states that whenever parents file such a complaint, they are entitled to an impartial due process hearing conducted by the state or local educational agency.  Next, section 1415(c) provides that if the hearing is conducted by a local educational agency, 'any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency.'  Finally, section 1415(e)(2) provides for a civil action.

*Gardner v. School Board of Caddo Parish*, 958 F.2d 108, 111 (5th Cir. 1992).  Before a person can file a civil action requesting relief under the IDEA, the procedures under subsection (b)(2) and (c) "shall be exhausted to the same extent as would be required had the action been brought under this subchapter."  *Id*.  See *Pace v. Bogalusa City School Bd.*, 403 F.3d 272, 289 (5th Cir. 2005)(explaining that plaintiff requested a hearing from the local administrative body, then appealed to the state level review panel).  While judicial review is normally not available until after the administrative proceedings have been exhausted, the administrative process may be by-passed in cases where exhaustion would be futile or inadequate.  *Honig v. Doe*, 484 U.S. 305, 327 (1988).

In *Gardner v. School Board of Caddo Parish*, the Fifth Circuit explained that the plaintiff bears the burden of demonstrating the futility or inadequacy of the administrative review.  *Gardner*, 958 F.2d at 112(citing *Honig*, 484 U.S. at 327).  In response to the School Board's motion to dismiss in *Gardner*, the plaintiffs argued that exhaustion would be futile because it was clear the School Board was not going to change its policy.  The plaintiffs presented affidavits of the School Board members, which stated the reasons for the policy.  The plaintiffs also

10

argued that they tried to negotiate with the School Board, but the School Board refused their demands.  The Fifth Circuit explained that "[a]lthough the [plaintiffs] presented some evidence that filing a complaint at the local level may be futile because the School Board is the local educational agency, they have not even alleged that an appeal of the local agency's decision to the state administrative agency would also be futile."  Consequently, the Fifth Circuit reversed the decision of the district court and granted the School Board's motion to dismiss.

    Subsequent to the Fifth Circuit's decision in *Gardner*, the court decided *Flores v. School Board of DeSoto Parish*, 2004 WL 2604225 (5th Cir. 2004).  The court looked to the facts in *Gardner*, namely, that the plaintiffs had not formally sought review by the board, and they did not appeal the school's decision to a state agency.  Although the plaintiffs argued it would be futile to ask the school board to change its policy, they did not allege that appeal to a state administrative agency would have been futile.  Under the governing jurisprudence, it appears that Plaintiff has not fully exhausted her administrative remedies.  She has not formally petitioned the OPSB and she has not demonstrated that an appeal to the state level would be futile.

11

Exhaustion of administrative remedies is also required prior to any suit being filed under the Rehabilitation Act. *Thomas v. East Baton Rouge Parish School Bd.*, 29 F. Supp. 2d 337, 338 (M.D.La. Nov. 20, 1998)(citing 20 U.S.C. § 1415(l)). Therefore, Plaintiff's claim under the Rehabilitation act fails for the reasons stated above.

With respect to Plaintiff's section 1983 action for violation of the IDEA, the court finds that although such a claim may be brought, Plaintiff's claim is premature. Section 1983 provides a civil remedy for acts taken under color of law that deprive "any citizen of the United States or person within the jurisdiction thereof" of "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1415(l) of the IDEA provides that

> [n]othing in this chapter shall be construed to limit the rights, procedures, and remedies available under the Constitution ... or other Federal laws protecting the rights of children with disabilities except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f)[providing for a due process hearing] and (g)[providing for an appeal to the state education board] of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Thus, a section 1983 claim for violation of the IDEA is subject to first filing a due process hearing before the proper educational agency. As discussed above, Plaintiff has not

exhausted her administrative remedies, therefore, her section 1983 claim based on a violation of the IDEA fails.

### (3) The Contracts Clause

Plaintiff contends that the State of Louisiana and the OPSB have passed laws and ordinances in violation of the Contracts Clause of the United States Constitution. Specifically, Plaintiff argues that once the OPSB settles a case, the following laws have the effect of nullifying the OPSB's contractual obligations: (1) Article XII, Section 10 of the state constitution, which is the state's anti-seizure provision; (2) Louisiana Revised Statute 13:5109, which allows public officials to enter into settlements and compromises; and, (3) the OPSB Policy and Regulation No. 3511.5, which governs the Board's payment of judgments and settlements of liability claims.

The Contracts Clause of Art. I, § 10, provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts." The laws that exist at the time and place of making a contract enter into it and become a part of it. *Home Building and Loan Ass'n v. Blaisdell*, 290 U.S. 398, 429-30 (1934). A constitutional challenge arises under the Contracts Clause in situations when a statute or ordinance is enacted subsequent to the formation of a contract and, as a result of the legislation, the contract is allegedly impaired. *See City of Dawson v.*

13

*Columbia Ave. Saving Fund, Safe Deposit, Title & Trust Co.*, 197 U.S. 178, 181 (1905).

The OPSB Policy, the statute permitting settlement of a claim by the OPSB, and the anti-seizure provisions of the Louisiana Constitution were all in effect before Plaintiff settled her suit in 2002. The Policy was adopted on June 10, 1996 and revised to its present form on January 12, 1998. The legislation allowing for settlement of the case became effective as amended in June of 1992, and the anti-seizure provisions of the state constitution became effective in November of 1995. Therefore, a cause of action does not exist under the Contract Clause because the allegedly prejudicial legislation pre-existed the settlement between Plaintiff and the OPSB.

**B.   State Law Claims**

While the facts of this case are tragic, and the failure of the OPSB to pay the agreed upon settlement appears callous under the circumstances, this Court is bound by applicable federal law to dismiss all federal claims asserted in this case. Because Plaintiff's federal claims are being dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses them pursuant to 28 U.S.C. § 1367(c)(3). Accordingly,

14

**IT IS ORDERED** that **Defendants' Motions Brought Under Rule 12(c) and Rule 12(d)** (Rec. Doc. 14) should be and hereby are **GRANTED**;

**IT IS FURTHER ORDERED** that this matter should be and hereby is **DISMISSED,** with prejudice as to all federal claims, but without prejudice as to any state law claims.

New Orleans, Louisiana this the  18th  day of August, 2005.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE